MURRAY v. TYNDALL, MAYOR, ET AL.

[No. 28,148. Filed December 4, 1945.]

642

*Russell W. Smith,* of Indianapolis, for appellant.

*Arch N. Bobbitt,* Corporation Counsel, *Henry B. Krug,* City Attorney, and *Glenn W. Funk* and *Ö. B. Hanger,* Assistant City Attorneys, all of Indianapolis, for appellees.

RICHMAN, J.—A demurrer to appellant's complaint was sustained. He refused to plead over. Decree was entered for appellees. In this appeal therefrom the sufficiency of the complaint is the only question.

He sues as a taxpayer to enjoin appellees as officials of the City of Indianapolis from "executing or delivering" bonds for the improvement of the Weir Cook Air-

port (otherwise known as The Municipal Airport) and from levying taxes to pay the bonds. The proposed improvement includes construction of a new building, acquisition of additional grounds for making a new terminal area and other development of the airport described only in general terms. It is stated that by agreement dated April 11, 1945, the new building is to be leased to the Civil Aeronautics Administration of the United States of America. Upon petition of taxpayers the Common Council on April 16, 1945, began proceedings pursuant to ch. 33 of the Acts of 1931, § 14-401 *et seq.*, Burns' 1933, which had resulted by June 4 in the authorization and sale of the bonds. All that remained undone was printing, signing and delivery and the payment of the purchase price. On the latter date an ordinance was enacted pursuant to ch. 190 of the Acts of 1945, creating the Board of Aviation Commissioners and transferring thereto control of the airport, which since its acquisition and original construction had been under the management of the Board of Public Works and Sanitation.

In only one respect does appellant question the validity of the proceedings prior to June 4, saying that the Common Council acted without the scope of authority granted by the 1931 Act in authorizing a bond issue to defray the expense of the new building for the use of the Civil Aeronautics Administration. The complaint and appellant's brief are both silent as to the terms of the proposed lease or the use to be made of the building by the federal agency. We are not even referred to the statute creating the agency, which is the "Civil Aeronautics Act of 1938," Public Law No. 706, 52 Stat.-at-Large 973, 10A F. C. A. Title 49, § 401 *et seq.* The duties of the Administrator, as described generally in Title 49, § 451, are:

"to encourage and foster the development of civil aeronautics and air commerce in the United States, and abroad, and to encourage the establishment of. civil air ways, landing areas, and other air navigation facilities."

This is consonant with the authority granted in our 1931 Act, which, in § 14-410, Burns' 1933, contemplates not only the original acquisition but "improvements" of aviation facilities, and, in § 14-402 (as amended in 1937), their "expansion." The provision in § 14-403 for bond issues "for such purposes," is broad enough to include the expense of improvement and expansion. We shall not assume that the lease referred to is out of line with these purposes. If, as provided in § 14-402, Burns' 1933 (Supp.), a private individual may be given a 50 year lease to build a hotel on airport land, certainly there can be no objection to a lease to the United States government for the purpose of developing air transportation.

It is also contended by appellant that the new Board may not complete what the old Board began, that is, the raising of funds by bond issue for this improvement and expansion. This question depends upon the purport of the 1945 Act and its effect upon the 1931 Act, under which the proceedings were begun. The earlier act, while general in its terms, applied solely to Indianapolis, which is the only city of the first class. The later act is not only general in terms but also in application. Any Indiana municipality, which includes a county, city or incorporated town, may establish as one of its executive departments a Board of Aviation Commissioners. They are given broad powers with reference to the acquisition and control of airports. There is no specific provision for raising money therefor by bond issue, but as provided in § 5,

when such Board is created it acquires "the exclusive control, management and authority" over air navigation facilities theretofore operated by the municipality through other agencies and of all its property devoted to such purposes, including "funds theretofore appropriated by any such municipality for aviation purposes."

The act under an emergency clause became effective March 6, 1945, the date of its approval. It repealed the 1931 Act, but not for 90 days thereafter. See Section 20. Evidently there was some reason for such postponement. During that 90 days occurred all of the proceedings designed to raise the funds for the improvements here involved. It might have been possible to complete the delivery of the bonds within that time. If this had been accomplished there could have been no reasonable contention that the new Board was not authorized to administer the funds. Why should it not complete the ministerial details left unfinished by the old Board? Both boards are merely agencies of the City of Indianapolis. It is the obligor of the bonds. It raises by taxation the funds for their payment. We find no suggestion in the 1945 Act that things done by a municipality under a former act should be undone. There was to be a continuity of management and operation, the one Board taking up what the other laid down. This is apparent from § 18, which may be called the saving section, reading:

"That all acts of any municipality in establishing an airport or landing field, and all other acts in connection therewith, taken and exercised by such municipality pursuant to the authority of any previous statute, including all issues of bonds either heretofore issued *or authorized* or *sold* under the provisions of any such statute, or any other statute of this state, the proceeds of which have been either used or *designed* for any purposes aforesaid, and all

acts of any municipal officials connected with or relating to any of the matters aforesaid, are each and all hereby expressly ratified, legalized and validated the same as if previously authorized by law. Henceforth any such municipality shall proceed in all respects in relation to any such airport or landing field in the manner provided by this statute." (Our italics.)

The use of the disjunctive "or" is significant. Bonds "issued" are validated. Bonds "authorized" likewise. And also bonds "sold." The section read as a whole indicates that the legislature was mindful of proceedings for bond issues already begun or that might be begun under the earlier act prior to its repeal and did not intend that they should be abandoned, certainly not if they had reached the stage of authorization which in this case was accomplished by the legislative action of the Common Council. We do not share appellees' opinion that this bond issue was expressly validated by § 18, for the proceedings had not been commenced when the legislature spoke on March 6. But we do hold that the section evinces a legislative intent that the proceedings between March 6 and June 6 should not be invalidated or terminated by the repeal of the act under which they were begun.

Relying upon rules applicable to negotiable instruments, appellant says that municipal bonds are not obligatory upon the corporation until they have been delivered. See *W. H. Barber Co.* v. *Hughes* (November 9, 1945), *ante*, p. 570, 63 N. E. (2d) 417. There is no contention to the contrary. The purchaser is not here suing upon the bonds, but it has been said in a similar situation that the contract of a municipality to sell is enforceable and may not constitutionally be impaired by subsequent legislation. See *State ex rel. City of Seward* v. *Marsh* (1920), 104 Neb. 159, 176 N. W. 92. The only

question here is whether the transaction may be completed by delivery. If the bonds had been printed and signed prior to June 4, and the purchaser had tendered the price, an administrative officer could not have defeated the issue by withholding physical possession of the bonds. In this instance printing, signing and delivery must all be regarded as ministerial acts that may be as effectively performed after, as before, the repeal of the 1931 Act. *Steinbruck* v. *Milford Township* (1917), 100 Kan. 93, 163 P. 647, cited by appellant, turns upon the meaning of the word "issued." As already indicated we are not here concerned with the question whether the bonds have been issued. Having been authorized and sold, the transaction may be completed, notwithstanding the repeal of the enabling legislation. This seems to us so clear that we deem it unnecessary to review cases from other states, cited by appellees, where similar results have beeen reached.

If there be any valid objection to this bond issue, it is not disclosed by the complaint or appellant's brief. The demurrer was properly sustained and the decree is affirmed.

NOTE.—Reported in 63 N. E. (2d) 703.